FILED

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA, ADMIRALTY

08 FEB 25  PM 3: 34

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

[Court name]

BY_____ DEPUTY

| | |
|---|---|
| KENNETH LEE ERICKSON, | Case No.: 07CV2266 LAB |
|  Plaintiff, | ANSWER TO COMPLAINT TO THE COURT OF ADMIRALTY FOR |
| vs.: | |
| CF 6290 TJ, Stanley J. Kott an individual | Violation of: Seamans' wage act |
| And dba Kott Construction, and Does 1 | Longshore and harbor Workers act;  wages. |
| through 10; | AND |
|  Defendants and Cross Complainant. | CROSS COMPLAINT FOR DAMAGES |

_____

    Comes now the defendants, CF 6290 TJ, a barge and STANLEY J. KOTT, who offer the

Response to the Complaint to the court of Admiralty for a violation of Seamans' wage

Act and harbor workers act for wages and a cross complaint for damages incurred

as a result of the filing of this action as follows;


                        General Allegations


1.  The plaintiff, Kenneth Lee Erickson (hereinafter ERICKSON) claims to be permitted

by the Port of San Diego to do Underwater Construction and Maintenance when in fact he

is not.  Upon investigation it has been verified by Unified Port District of San Diego

that the permit that was issued  to ERICKSON expired in April of 2007 and was not

renewed.

    2.  The Plaintiff, "ERICKSON" claims among other things that the Defendant "KOTT"

    is a Canadian Citizen.  "KOTT" is an American Citizen.

    3.  The Plaintiff, "ERICKSON"  claims that the defendant CF 6290 TJ is an ocean

    going construction barge in navigation owned by the defendant "KOTT".  "THE BARGE"

    is in fact not owned by the defendant "KOTT" but is owned by Hansen Dock and

    Mooring Company LLC, involving Steve Hansen and Jim Hansen as shareholders,

[Summary of pleading] - 1

1  Hereinafter referred to as "THE PARTNERSHIP". The plaintiff "ERICKSON" claims that
2  "THE BARGE" is ocean going in navigation but this is not true. "THE BARGE" is
3  authorized for inland waterways and harbor use only. It was disabled and incapable
4  of being moved. Some time early in 2007 "ERICKSON"
5  got involved in a three way trade with a mutual friend, Brett Jones. That trade
6  involved him receiving a generator from Brett in exchange for "ERICKSON" to fix the
7  transmission in my barge. He claimed to be knowledgeable at this. What he did was
8  cut two hoses to it and dismantle the pump and he left the pieces of the pump on
9  the floor of "THE BARGE" and walked away leaving the job unfinished. My part of
10  that trade was to remove an engine from Bretts' boat with the crane and transport
11  that engine to shore. Brett and I performed the duties asked of us but "ERICKSON"
12  did not. It was "ERICKSON" himself who left the barge in that state and for him to
13  now claim to have worked on it as a seaman in navigation makes this fraudulent
14  claim that much more of a blatant lie.
15      The only reason "ERICKSON" has claimed that is to allow him to pursue a claim
16  under the ruse of being hired as a Seaman in navigation which would allow him to
17  name "THE BARGE" as a co-defendant and tie the hands of the new owners in order to
18  pressure them into paying him money for a debt that was never owed by the
19  partnership or the defendant "KOTT". The entire First cause of action is based on
20  small snippets of truth mixed with a lot of fabricated information which was
21  created solely by "ERICKSON" for his need to proceed with a claim as a seaman and
22  to allege that he is owed back wages which places the defendant "KOTT" in violation
23  of the LONGSHORE AND HARBOR WORKERS ACT.
24      "ERICKSON" was never "hired" to perform the work he has claimed he did and he
25  was well paid for the small amount of casual help he offered as an incentive for me
26  to enter into a partnership that never did come to fruition. None of what he did
27  had anything to do with the workings of "THE BARGE". As a matter of fact he messed
28  up what little he did do on "THE BARGE" and "ERICKSON" came into this scenario
29  owing me a transmission overhaul.
30   Most of the time he spent at the jobsite was to get an education into the workings
31  of "THE BARGE" in order to be of value to our "Ill Fated Partnership" which
32  will be described later.

[Summary of pleading] - 2

1         That brief education is now being used by "ERICKSON" to sound well

2    versed in the art of jetting pile and setting spuds of which he did neither.

3         An experienced hand at the work he has claimed to have done would find

4    his description of the process humorous and would recognize that there is no way

5    a person who actually did this work would describe it the way he has in this claim.

6         They would also recognize that the time it takes to set a pile varies from as

7    Little as 20 minutes to a maximum of two hours and setting spuds takes as long as

8    It takes for a winch to drop a pipe (spud) into the soil below the barge.. (about

9    Four seconds)

10

11

12

13                            First Cause of Action

14

15    6  "ERICKSON" alleges that on or about the 18th of June 2007 the defendant "KOTT"

16    told the plaintiff "ERICKSON" that there had been an accident at the Coronado Cays

17    involving "THE BARGE"  and that the Defendant requested that "ERICKSON" dive at the

18    site at 32 Admiralty Cross in Coronado California and assist "THE BARGE" in the

19    removal of the underwater debris, the re-hoisting and re-positioning of two lost

20    pilings which were then placed back on "THE BARGE" and the climbing of the hoist

21    mast and the jib boom to place the main hoisting cable back on the jib pulley.

22    He further alleges that the rate for this work was $250.00 per day and that he

23    accomplished this work in two days.  He also states that the Defendant agreed to

24    pay him $500.00 and that he has repeatedly demanded that the defendant pay him the

25    sum of $500 for the work and labor performed.

26

27                         Response to first cause of action

28    There was an incident involving a boat hoist (NOT "THE BARGE") that was carrying

29    two pilings behind 34 Admiralty Cross which occurred on or about the 22nd of May

30    2007. One of the Two pontoons on the boat hoist developed a leak and began to sink.

31    One piling was secured to the main hoist hook prior to the boat hoist sinking. As

32    air escaped from The damaged pontoon it partially sank and listed to one side.

1    One pile stayed hung on the slings where it should be and I called Brett Jones and

2    Sarah McElroy to come to the Cays from their boat at A8 anchorage and they came

3    over right away.

4    They helped me jet the pile into the appropriate place in the sand.  The plaintiff

5    "ERICKSON" had not been contacted at all and the first pile of the two

6    That he Refers to did not involve him in any way. The second pile was left at the

7    Bottom of the channel in about 8 feet of water and the damaged boat hoist referred

8    to by the Plaintiff was relocated to an area behind 32 Admiralty Cross and left

9    there temporarily. "THE BARGE" is not large and does not have the capacity to carry

10   one pile let alone two. That is the very reason the Pilings were on a boat hoist in

11   the first place.

12   The pilings "ERICKSON" claims to have placed on "THE BARGE" were never on it.

13   One pile was placed within hours of the incident with no involvement by "ERICKSON"

14   and the other remained in the water until I returned from Camarillo the following

15   week.  During the course of the following week I was pressed for time because my

16   wife and I were moving our household furniture to Upstate New York so I asked Brett

17   and Sarah if they could help me get the last piling set before I left and they

18   agreed to help.

19   Brett suggested that we ask "ERICKSON" if he would assist in getting the second

20   piling hooked up to set it in place because Brett was too busy to get over there

21   right away. I picked up "ERICKSON", drove him downtown to the dive shop to pick up

22   his diving tanks and this took all morning.   Early in the afternoon "ERICKSON" and

23    I hooked the slings on to the second pile, and we attached a balloon to one piece

24   of the sunken boat hoist pontoon. Brett and Sara showed up.  "ERICKSON" stayed to

25   watch the pile be set in place by Brett, Sarah and I.  By that time it was getting

26   late in the day and we all left.  "ERICKSON" was at the job site for no more than

27   four hours but he was not "hired" by me as a diver to perform any work for wages.

28   When he came over to the barge He was attempting to enter a partnership with me

29   and as a potential partner he offered to help. Also keep in mind that he still owed

30   me a transmission overhaul all this time.  While Brett and Sarah were there we

31   noticed that the main winch cable was riding on the hub of the jib pulley and

32   ERICKSON volunteered to place it back on the track of the pulley. I hoisted him up

1    to it in a safety harness with the secondary winch and he slipped the cable back

2    into the groove. This took about 15 minutes. That was the entire scope of work that

3    "ERICKSON" participated in.

4

5    Earlier That year "ERICKSON" and I had discussed a partnership with a man named

6    J.R. in Los Angeles who was to fund a new company to build docks and market them

7    world wide.  "ERICKSON" was interested in gaining a minor share of the new company

8    And this was the reason he loaned me $200.00. It was not $400.00 as he claims and

9    it was  not for "necessaries" as alleged by "ERICKSON" in his general allegations

10   that followed his second and third cause of action.  The loan "ERICKSON" refers to

11   had nothing to do with any work I was involved in.  I required the funds to go to

12   Los Angeles and put the deal together for both of us but it never did happen. J.R.

13   did not come through with his funding and the deal fell apart.  I repaid "ERICKSON"

14   the $200.00 he loaned me and I paid him $400.00 more in cash in TWO SUBSEQUENT

15   MEETINGS when he asked me for more money. "ERICKSON" and I took a trip to Tijuana

16   together at some time later that summer and I paid him some more money at the end

17   of that night.

18   "ERICKSON" called me in October once and told me he needed money to sail to

19   Mexico because the Harbor Police were after him. I had no money at this time and I

20   told him so.  I once again stated to him that I did not owe him any more. I truly

21   believed that he had been more than compensated for the small amount of time he

22   spent with me at "THE BARGE".  I never heard from "ERICKSON" again until he called

23   me in early November 2007 and told me that I owed him $400.00 more and if I did not

24   pay it he was going to sue me. Once again I did not have any money and that I did

25   not owe him any more and I told him so. He mentioned at that time that he was aware

26   that I had "SOLD" the barge to a third party and that I should have enough to pay

27   him more.  At that time I told him that I did not owe him any more and that the

28   Deal I made on the barge turned out to not generate any funds for me because of an

29   arrangement I made with the buyers to take the money owed and to re-invest it in

30   the repairs and refurbishment of the barge.  I did receive a deposit on "The Barge"

31   but that was spent on materials and expenses related to another job I had started

32   in La Playa cove.  It turned out that I was not paid anything for that job either

1  and this too turned out to be a financial disaster.  All this time I felt that

2  "ERICKSON" and I were more than "Squared up" and that he was paid too much for the

3  small amount of time he had spent with me and the transmission work still owed.

4       This is when this situation twisted and "ERICKSON" became a predator and an

5  extortionist and not a victim as he would like this court to believe.  My partners

6  and I were totally blindsided by the claim "ERICKON" filed for $1,300.00.  This

7  figure was totally fabricated by "ERICKSON".  There was never any agreement to that

8  as he claims and he was not owed it.

9       I was told by the partners that I would receive no more funding until we

10  determined the final cost of the repair project and because of "ERICKSON" suing me

11  and "THE BARGE" the work on the barge stopped.  A major part of that repair work

12  involved replacing the engine and transmission with a rebuilt unit that came as a

13  package deal.  The only reason this was necessary is because the transmission never

14  was repaired by "ERICKSON", and it was easier to swap out the entire unit than to

15  replace just the defective transmission.

16  I have been advised that because of The looming danger of "THE BARGE" being

17  seized by "ERICKSON" as a result of this Fraudulent and Malicious Lawsuit,

18  any funds that may have been due me are not going to me, BUT necessary to defend

19  their ownership position in "THE BARGE".

20

21

22

23

24

25

26                              Second cause of Action

27

28

29  The rest of the allegations made by "ERICKSON" are totally fabricated, malicious

30  and frivolous.  I never did hire "ERICKSON" to work for me in all that time and his

31  claim that he worked for me from June 22 2007 to June 30 2007 is a total lie. His

32  claim that he worked for me as a seaman on "THE BARGE" while it was in Navigation

1  that was substantial in terms of both its duration and nature" is ludicrous and a

2  lie.  He did not "work" on it and "The Barge" stayed exactly where it was and did

3  not move in all that time.

4       This barge was towed into San Diego harbor by Vessel Assist in July of 2006 to

5  La Playa Cove.  It was then towed by vessel assist to Coronado Cays in November of

6  2006 where it remained until it was towed to Shelter Island in August of 2007. It

7  has been disabled for all that time. For "ERICKSON" to state that he worked as a

8  seaman is an impossibility. The only reason he has claimed this  is to allow him to

9  name "THE BARGE" as a defendant for his own purposes.  At the time "ERICKSON"

10  alleges to have worked for me other things were happening.  I left the damaged boat

11  hoist and "THE BARGE" behind the homes of my clients at 32, 30 and 34 Admiralty

12  Cross while I moved my furniture across the country to Upstate New York.  I was

13  threatened by my Client Kay Catherwood to get back there and remove everything or

14  they would call the coast guard and have it removed at my expense.  I accomplished

15  this upon my return from upstate New York and I moved "the barge" and the remains

16  of the damaged float away from that location to 61 The Point where I repaired a

17  dock for another client at 61 The Point in Coronado Cays.

18       Contrary to his claim "ERICKSON" once again had no participation at this

19  address and did no work on the barge or the job.  He showed up late one afternoon

20  and demanded money from me and I paid him $200.00 which was all I had at that time.

21  He was told at that time he had no more money coming and to stop asking for more.

22  Mark Horner was working with me when this happened and he will give the court a

23  sworn statement verifying this.   The reason "ERICKSON" filed the lawsuit against

24  me and "THE BARGE" is because he is angry that I became involved in a partnership

25  with another group on the barge because he wanted that for himself and it did not

26  happen.  I could no longer afford to take care of the ongoing expenses and the cost

27  of living in California and I had to leave.

28

29       Late in August 2007 I got a phone call from Ojai California from my ex wife

30  who informed me that my 15 year old daughter had been hospitalized and I needed to

31  come back to California right away to pick up my 15 year old daughter from Vista

32

1    Del Mar hospital in Ventura and take her home with me because of a failed Attempted

2    Suicide.

3

4        "ERICKSON" and his fraudulent attempts to collect more money that he was never

5    owed, "THE BARGE" and the project at La Playa cove all became secondary PRIORITIES

6    at this time and I turned my full attention to getting my daughter out of the

7    situation she was in and back to upstate New York.  This is part of the reason I

8    did not get paid on the project in La Playa cove which was finished by another

9    partner and why I did not participate further in the repairs of the barge.

10

11        I do not owe "ERICKSON" any money and the fact that he has named

12    "THE BARGE" and I as defendants has placed my arrangements with the new

13    partners and my personal finances in total Chaos.  The truth is that he

14    owes me money and he has caused me severe harm with this malicious lawsuit.

15

16

17                            Third cause of action

18

19    Because there are no wages due to "ERICKSON" the basis for the third cause of

20    actions seeking penalties for wages unpaid is not a valid claim, and has no merit.

21

22                            Fourth cause of action

23

24    Because there are no wages due to "ERICKSON" the basis for the fourth cause of

25    action seeking "twice the wages owed per day from the alleged time they were due"

26    Is not a valid claim and has no merit.

27

28                            Fifth cause of action

29

30    Plaintiff "ERICKSON" is seeking attorney fees and costs in an action which is not

31    based on reality. It is an action which is being brought before the courts in PRO SE

32    and in FORMA PAUPERIS because he is angry and for no other reason.   It would be

                            [**Summary of pleading**] - 8

1  difficult to see where any costs have been incurred on the part of the Plaintiff,

2  other than his time, which he has chosen to spend in pursuit of money he is not owed

3  and for no valid  reason other than his desire for revenge for not entering into a

4  partnership with me and the barge.  He saw an opportunity to extract money from the

5  partners who did get the barge.

6

7                          Sixth cause of action

8

9      The Plaintiff is claiming interest and penalties in the amount of $30,600.00 plus

10  $200 per day in penalties from here to eternity and there is no basis for this claim

11  because there is no money owed to him.

12

13      Wherefore the defendants STANLEY J. KOTT and "THE BARGE" pray that this case be

14  dismissed and that all claims brought before this court in this action by the

15  plaintiff KENNETH LEE ERICKSON be set aside as Fraudulent and malicious.

16

17

18  _S J Kott Feb 20/08_  *Stanley J. Kott*  Stanley J. Kott. February 20 2008

19  I, Stanley J. Kott am the defendant along with "THE BARGE" CF 6290 TJ in the above-

20  titled action.  I have read my response to the foregoing complaint and know the

21  contents thereof.  The same is true of my own knowledge, except as to those matters

22  which are therein alleged on information and belief, and as to those matters, I

23  believe them to be true.

24

25  I declare under penalty of perjury under the laws of the State of California that the

26  forgoing is true and correct.

27

28  Stanley J. Kott        February 20, 2008

29

30  _S J Kott February 20 2008._

31

32  *Stanley J. Kott*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

21                              CROSS COMPLAINT

22

23

24                          General  Allegations

25

26      Because the claim presented by "ERICKSON" named "THE BARGE and Stanley J. Kott as

27   defendants any funds that were due to me by my "PARTNERS" and the process of working

28   on "THE BARGE" by Steve Hansen and Jim Hansen has stopped. If that work cannot proceed

29   "THE BARGE" will be incapable of being used to generate money for the partnership and

30   this will cost the partnership thousands of dollars per day in lost revenues. Ongoing

31   work on the barge ceased in Mid November when the plaintiff "ERICKSON" delivered

32   paperwork to the partners outlining his course of action and naming "THE BARGE" as a

1   defendant in a case where he knew he had no basis for such a claim. This action was

2   totally aimed at extracting monies from the partners and not based on any reality.

3   This is further evidenced by the fact that "ERICKSON" did not serve the defendant

4   "KOTT" with this lawsuit until months later. He only delivered it to the partners

5   where he felt he could have a better opportunity to get money when he was informed by

6   me that I had none and that I did not owe him anything.  "ERICKSON" also owes "KOTT"

7   an overhaul on the transmission on  "THE BARGE" and he has never taken that into

8   consideration in any of the allegations or claims he has put before this court.  It

9   cost the partnership $3,500.00 plus the cost of hardware necessary for the exchange

10  and a month of time to replace the power train in "THE BARGE". The only reason this

11  was necessary is because "ERICKSON" did not repair a transmission he was supposed to

12  repair as his part of an exchange he did not complete.

13       "ERICKSON" received the full benefit of that exchange but he did not fulfill his

14  obligation under that exchange which was to overhaul the transmission in the barge.

15  The total amount of this deficiency has cost the partnership at least $5000.00 in hard

16  costs and a month of labor for Steve Hansen. The amount of this loss is at least

17  $8,000.00

18

19  "ERICKSON" was told that the partners were not going to pay him the $5,000 he said he

20  would settle for so he finally served me in Florida.

21  In a recent call from "ERICKSON" he stated "So they are just going to screw me over"

22  as if he was doing everyone a big favor by offering to settle for $5,000.00 and not in

23  excess of $30,000 he demanded in this law suit.  He is not entitled to anything but

24  insists on carrying out this attempted extortion at the expense of the U.S. Government

25  and everyone else he has involved in this "charade".

26

27

28  Public Records show that there have been no less than twenty two lawsuits filed by

29  "ERICKSON" in San Diego Superior Court over the past 9 years, most of them for

30  personal injury and other unfounded allegations.  Several of them are against

31  The City of San Diego and the San Diego Port District and all of the Commissioners on

32  that board.  It has cost all of these people and entities tens of thousands of dollars

1   to defend themselves and has cost "ERICKSON" very little as he has acted in PRO PER on
2   all of these cases. I believe that there can not be any real basis for that many
3   actions to be brought before the courts by anyone. "ERICKSON has told me in the past
4   that he has some training in law and he is using that knowledge to hurt people.
5   "ERICKSON" is practicing "PREDATORY LAW" and he is a "VEXATIOUS LITIGATOR" and he
6   should be reprimanded for placing so many people in such peril and mental anguish. I
7   believe that he is involved in this activity as "entertainment" and he no regard for
8   the problems he is causing or the expense he is costing everyone he gets angry with.
9   I also believe that he is using the U.S. District Court to handle this action because
10  he has "Worn out his welcome" at the San Diego Superior Court and he would not be
11  allowed to proceed with the outrageous claims and damages he is seeking in that court.
12
13  In that space of time at least four Lawsuits have been filed against "ERICKSON"
14  including one TO PROHIBIT CIVIL HARASSMENT and one criminal case filed against him by
15  the District Attorneys office.  That case is now in Appeals.  I was told by "ERICKSON"
16  that he was going to place an in the San Diego Newspaper claiming that I cheated him.
17   I am not sure if he has done that or not but he has threatened to do that and it
18  would not surprise me based on his need to be perceived as a "VICTIM".  He has also
19  demanded $5,000 from my partners as a payoff to drop this law suit and he would make
20  it go away. His reasoning is none other than "It will cost you that much to defend
21  yourselves against it and you will lose anyway so you might as well just pay me and
22  make it go away"  There is no way to guarantee that it will go away because the fact
23  is that he is not owed money now and has filed this suit in an attempt to extort funds
24  from me and my partners in "THE BARGE".
25        If this lawsuit is not defended against successfully there is no way of knowing
26  that he will not do the same thing again in a few months.  I have no money and
27  "ERICKSON" knows that and that is the reason he named "THE BARGE" in this lawsuit.  He
28  believed that the partners have money and that is the reason he needed to hold this
29  over their heads.  By just naming Myself as a defendant and not naming "THE BARGE"
30  there would have been no threat to the partners and now they are tormented by this
31  lawsuit and worried they are going to lose the barge and their substantial investment
32  of cash and time to "ERICKSON" when they have had nothing to do with him. What

1   "ERICKSON" does not fully comprehend is that the partners too have limited resources

2   to work with and they are exhausted as well.

3       They have run up a bill with an attorney seeking advice and they have been

4   assured that they indeed could lose the barge if this law suit is not defended

5   successfully by me.  They attempted to file a statement of defense on behalf of "THE

6   BARGE" only to be told by the court that they were not a party to the lawsuit so could

7   not file a defense.   "ERICKSON" is well aware of the predicament he has created for

8   them and he has asked me to demand payment from them several times.

9

10                          First Cause of Action

11      I am in a very bad position financially and cannot afford to hire an attorney to

12  defend myself against this lawsuit. I have moved to Florida because I cannot afford to

13  Live in California any longer. I have been placed in that position because of the

14  demands of "ERICKSON".  I believe it has cost me in excess of $10,000 in monies owed

15  to me by my partners on our purchase agreement and they have no way of paying those

16  funds to me until the lawsuit filed by "ERICKSON" is dismissed and "The Barge" is

17  finished and put back to work. The total monies due to me by the partners is

18  $10,000.00

19

20                          Second Cause of Action

21  The partners have invested over eighteen thousand dollars in cash and four months of

22  hard work into upgrades on "THE BARGE" and the arrangements with me. "ERICKSON" is

23  aware that the deal I made with them involved me participating in that cost prior to

24  any funds being paid to me and he is also aware that the work has stopped on the barge

25  as a result of his actions which places our whole arrangement and ability to generate

26  an income with "The Barge" in jeopardy. This delay is costing the partnership

27  thousands of dollars per day in lost revenues and this figure will be determined at

28  trial from date the delay was caused by the actions of "ERICKSON". Part of the delay

29  was caused by "ERICKSON" in his failure to overhaul a transmission in the barge. I

30  would estimate that the loss to the partnership and "KOTT" to date would be $42,000 in

31  lost revenues.

32

The partners have been paying slip fees at Driscolls' Landing at $350 per month since
August and have rented an office at that location for $2,500 per month since November
all for the purposes of using "THE BARGE" as their only source of income. These are
ongoing expenses that have been placed in perpetuity by the actions of "ERICKSON".
The hard costs for slip fees and office rent from the time ERICKSON delivered the
paperwork to the partners and caused the delay of further investment of time and money
into the barge are;  $1,400.00 in slip fees and $10,000.00 in office rent. This totals
$11,400.00 to date and the final figures will be determined at trial from the date all
work on "THE BARGE" stopped.

   I also would like to request permission to PROCEED IN FORMA PAUPERIS. I would like
to arrange for a hearing in Florida at a U.S. District Court here.
"ERICKSON" has asked the U.S. Government to sponsor this attempt at extortion.  I
believe that "ERICKSON" is no more needy than myself and I believe there should be
some compensation paid by him for the grief and damages he has caused me and my
partners.

Wherefore defendants pray judgment against plaintiff as follows:

   1. For Compensatory damages in the amount of $10,000.00 for loss of payment to
      defendant "KOTT" by the partners as a result of this action by "ERICKSON";

   2. For Compensatory damages in the amount of $8,000.00 for the loss to "KOTT" and
      The partnership as a result of the transmission not being overhauled by
      Erickson in an exchange where he was required to do so but failed to honor his
      End of the deal.

3.  For compensatory damages in the amount of $42,000.00 for lost revenues to the the partnership and "KOTT" as a result of delays caused by this action by "ERICKSON" and his failure to complete the overhaul of the transmission on the barge.

4.  For Compensatory damages in the amount of $11,400.00 for extra rent and slip Fees paid by the partnership as a result of the delay caused by "ERICKSON";

5.  For reasonable attorneys' fees and for the cost of suit herein incurred;

6.  For interest on an amount determined at trial from date compensation due;

7.  For such other and further relief as the court may deem appropriate.

Stanley J. Kott _SJKott Feb20/08_          February 20, 2008

_Stanley J. Kott._

I, Stanley J. Kott am the defendant and cross complainant in the above titled action. I have read the foregoing complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Stanley J. Kott        February 20, 2008

_SJKott Feb 20/08._

_Stanley J. Kott_

Stanley J. Kott

52 Broadmoor Lane Rotonda West, Fl. 33947 941 830-8868
Pro Se.

_____
**[Attorneys' names]**

## PROOF OF SERVICE

## STATE OF FLORIDA, COUNTY OF CHARLOTTE

I am employed AND I reside in the county of Charlotte, State of Florida, I am over the age of 18 and not a party to the within action; My address is 6122 Shasta St. Englewood, Florida 34224.

On February 22, 2008, I served the foregoing document, described as **ANSWER TO COMPLAINT TO THE COURT OF ADMIRALTY FOR VIOLATION OF SEAMANS' WAGE ACT, LONGSHORE AND HARBOR WORKERS ACT; WAGES and CROSS COMPLAINT FOR DAMAGES,** On the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope, addressed as follows:

**KENNETH LEE ERICKSON**            **HANSEN DOCK AND MOORING COMPANY**

**2804 CANON STREET**               **STE. 202 4918   N.   HARBOR BLVD.**

**SAN DIEGO, CA. 92106**            **SAN DIEGO, CA. 92106**

                                    **nahj9@yahoo.com**

**By Mail_X_**      I am "readily familiar" with the practice of collection and
                    Processing correspondence for mailing. Under that practice it
                    Would be deposited with U.S. postal service on that same day
              with postage thereon fully prepaid at Cape Haze, Florida, in
                    The ordinary course of business.  I am aware that on motion
                    Of party served, service is presumed invalid if postal
                    Cancellation date or postage meter date is more than one
                    Date after date of deposit for mailing in affidavit.

**By EMAIL X**     I sent the entire pleading in a *.pdf file to the email address above

**I declare under penalty of perjury under the laws of the State of Florida That the above is true and correct.**

**Executed on February 22,2008,at Englewood, Florida.**

**[Summary of pleading] - 16**