Kenneth Lee Erickson
2804 Cañon St.
San Diego, Ca. 92106
erickskl@yahoo.com
619 756-4424
Pro Se.





DEPUTY

**NUNC PRO TUNC**

MAY 0 2 2008

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA, ADMIRALTY

| | |
|---|---|
| KENNETH LEE ERICKSON | Case No.: 07cv2266-LAB (CAB) |
|         Plaintiff, | NOTICE, MOTION, MEMORANDUM of POINTS AND AUTHORITIES, DECLARATION of KENNETH LEE ERICKSON and EHIBITS in support of **MOTION TO STRIKE** |
|    vs. | |
| CF 6290 TJ a barge, Stanley J Kott an individual and dba Kott Construction, and Does 1 through 10; | |
| | Judge: Hon. Larry Burns |
|        Defendants | Court:<br>Address: 940 Front St, San Diego, Ca.<br>Time: 11:15 am<br>Date: June 23, 2008 |

To defendant, Stanley  J. Kott, and his attorney of record:

**NOTICE IS HEREBY GIVEN** that,  on June 23 2008, at 11:15 am, or as soon

thereafter as the matter may be heard, in front of the Honorable Larry Burns

of this court, located at 940 Front St., San Diego, California, plaintiff

will, and hereby does, move pursuant to Code of Federal Procedure sections

Rule 6, 7, 12(f) and Southern District Local Civil Rule 7.1 for an **Order**

**Striking an Answer and Cross-Complaint** on file herein by the Motor Vessel CF

6290 TJ.   The motion will be made on the ground that the answer and cross-

Case No.: CV 07-2266

Motion to Strike

-1-

Kenneth Lee Erickson
erickskl@yahoo.com

1  complaint by Stanley J. Kott for the Motor Vessel CF 6290 TJ constitutes

2  Unlicensed Practice of Law. And, on the grounds that the court may strike

3  from a pleading an insufficient defense or any redundant, immaterial,

4  impertinent, irrelevant, or scandalous matter.

5  The words and or paragraphs sought to be stricken are:

6  **Answer to General Allegations**

7  At Page 1 line 15 of the answer.

8  At page 6 line 4 and 5 of the answer.

9  At page 6 Line 16 through 19 of the answer.

10  **Answer to Second Cause of Action**

11  At page 6 Line 29 through 30 of the answer

12  At page 8 Line 4 through 7 of the answer.

13  At page 8 Line 13 through 14 of the answer.

14  **Cross-Complaint General Allegations**

15  At page 11 Line 23 through 25 of the cross-complaint.

16  At page 11 Line 28 through 32 and;

17     continuing on page 12 line 1 to 11 of the cross-complaint.

18  At page 12 Line 13 through 15 of the answer.

19  The motion will be based on this notice of motion, on the declaration(s) of

20  Kenneth Lee Erickson, the supporting memorandum served and filed herewith, on

21  the records and file herein, and on such evidence as may be presented at the

22  hearing of the motion.

23  Respectfully Submitted

24  *Kenneth Lee Erickson*

25  Kenneth Lee Erickson    /s/  *Kenneth Lee Erickson*              4/30/2008

Case No.: CV 07-2266
                                Motion to Strike

Erickson v. M/V CF 6290 TJ a barge et. al.

1

2

3
### Declaration of Kenneth Erickson

4

5
I am the Plaintiff in the above-entitled action.  I have been in contact with

6
an attorney, Roger L. Haskell, who represents the party known as: CF 6290 TJ,

7
a barge sued herein in rem.  His letter to me as such, is attached as exhibit

8
A.  And, he represents the corporate owners, Hansen Barge and Mooring

9
Services, LLC.

10
Although, the party CF 6290 TJ has not filed an answer in the instant suit, I

11
have received assurances that one will be proposed and filed. I have included

12
attorney Roger L. Haskell in the ENE and Rule 26 Discovery as a courtesy.

13

14
I have given assurances to the Honorable Cathy Ann Bencivengo and to attorney

15
Roger L. Haskell that I will not impose an arrest of the barge CF 6290 TJ

16
without some well-founded reason.  In return consideration, attorney Roger L.

17
Haskell offered that the barge will not leave the San Diego area.

18

19
Accordingly:

20
The motion to strike is therefore a move in part to allow the above-mentioned

21
party's attorney to interpose an answer for CF 6290 TJ, a barge.

22
Respectfully Submitted,

23

24
Kenneth Lee Erickson    /s/  *Kenneth Lee Erickson*        4/30/2008

25

Case No.: CV 07-2266

Declaration of Kenneth Erickson

-1

Erickson v. M/V CF 6290 TJ a barge et. al.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

# Exhibit A

24
25

Case No.: CV 07-2266

Exhibit A to Declaration of Kenneth Erickson

-1-

Law Offices of Roger L. Haskell
1719 Valkyria Lane
El Cajon, California 92019
Tel. (619)243-9309 Fax. (310)496-1533

March 31, 2008

Mr. Kenneth Erickson
2804 Canon Street
San Diego, CA 92106

Re: 07CV2266

Dear Mr. Erickson,

This letter is directed to you to confirm that these offices have been retained by the principals of Hansen Barge & Mooring Services to safeguard their current ownership interest of Barge CF 6290 TJ, and, as necessary, to represent their interests through conclusion in the matter of Erickson v. Kott, 07CV2266 LAB, before the United States District Court.

As such, please continue to direct your communications regarding the matter of Erickson v. Kott, whether by phone, e-mail or writing, to my office. Thank you for the courtesy and professionalism you have shown to date in this matter.

Best regards,

Roger L. Haskell, Esq.

1  Erickson v. M/V CF 6290 TJ a barge et. al.

2              **Memorandum of Points and Authorities**

3  **Unlicensed Practice of Law**

4  **1. UPL Representing the Motor Vessel CF 6290 TH**

5  The Motor Vessel CF 6290 TJ is an undocumented vessel, which is currently

6  registered and licensed under the laws of the State of California.  This

7  vessel is a party named in the above-mentioned lawsuit and sued therein <u>in</u>

8  <u>rem</u>.

9  The Defendant Stanly J. Kott (also a party to the above-mentioned lawsuit)

10 might argue that while he was the owner this vessel at the time that the

11 above-mentioned dispute occurred, he was situated to represent the vessel in

12 this lawsuit.

13 Stanly J. Kott is not an attorney at law accepted to the bar in any state

14 within the United States.  Only an attorney at law can represent this party,

15 CF 6290 TJ, a barge.

16 Local Rules of the United States District Court Southern District state that

17 in order to represent a party in a case in a district court, a person <u>must be</u>

18 <u>an attorney at law</u> and <u>must be admitted to the bar of that particular court</u>:

19                          **Local**
                         **Civil Rule 83.3**
20

21       **Attorneys – Admission to Practice Standards of Conduct – Duties**
         a. **Definitions**. For convenience, attorneys, proctors, advocates,
         solicitors, and counselors of this court will be referred to in these
22       rules by the designation, "attorneys."

23       b. **Practice.** Only a member of the bar of this court may enter
         appearances for a party, sign stipulations or receive payment or enter
         satisfaction of judgment, decree or order.
24

         c. **Admission of Attorneys to Practice.**
25
              1. **Requirements and Procedures.**

a. **Admission to the Bar of this Court.** Admission to and continuing membership in the bar of this court is limited to attorneys of good moral character who are active members in good standing of the State Bar of California.

b. **Procedure for Admission.** Each applicant for admission shall present to the clerk a written petition for admission, on the form supplied by the court, stating the applicant's residence and office addresses and by what courts the applicant has been admitted to practice and the respective dates of admission to those courts.

The petition shall be signed, certifying that the attorney is a member in good standing of the State Bar of California.

Upon qualification, the applicant may be admitted, upon oral motion or without appearing, as determined by the court, by signing the prescribed oath and paying the prescribed fee, together with any required assessment, which the clerk shall place to the credit of the court non-appropriated funds.

2. **Practice in this court.** Except as herein otherwise provided, only members of the bar of this court shall practice in this court.

3. **Attorneys for the United States.**

2. **UPL Representing Hansen Dock and Mooring Service, LLC.**

The plaintiff's claim for wages and penalties, pursuant to the rules of Admiralty, both as a diver, and as a seaman to the Motor Vessel CF 6290 TJ, follows the vessel, notwithstanding an apparent change in ownership.

Presently, a corporation, the Hansen Dock and Mooring Service, LLC. claims ownership in the Motor Vessel CF 6290 TJ.  The Defendant Stanly J. Kott is not a member of the California State Bar. The defendant, Stanley J. Kott in filing his cross-complaint, seeks to recover monies he believes were lost by this corporation.   Even if Stanley J. Kott was a member of the corporation or acting in partnership with the corporation, he could not represent the corporations interest, as an interested party to the above entitled cause of action; let alone file a cross complaint on behalf of the corporation.

### 3. Florida Residency

The dispute in the above-entitled action occurred in San Diego, but the Defendant Stanly J. Kott is presently a resident of Florida.  The Defendant Stanly J. Kott cannot rely on his residency in Florida to exempt him from the rule that only an attorney at law can represent a party in district court.

Several district courts require attorneys seeking admission to their bars to take an additional bar examination on federal law, including the following:

1. The Southern District of Ohio,
2. The Northern and Southern Districts of Florida, and;
3. The District of Puerto Rico
   http://www.casd.uscourts.gov

### 4. Admission to District Court Bar

The United States usually does not have a separate bar examination for federal practice (except with respect to patent practice before the United States Patent and Trademark Office). Admission to the bar of a district court is generally granted as a matter of course to any attorney who is admitted to practice law in the state where the district court sits. The attorney submits his application with a fee and takes the oath of admission. Local practice varies as to whether the oath is given in writing or in open court before a judge of the district.

### 5. Nonlawyer Register to Practice Law

The defendant Stanley J. Kott is not a "nonlawyer register to practice law" before the U.S. Pattent Office, and cannot rely on the ruling in Sperry 373 U.S. 379 (1963) wherein the U.S. Supreme Court established a rule of Federal preemption of state unauthorized practice of law statutes:

> Mr. Sperry,  who was a nonlawyer registered to practice before the U.S. Patent Office.  Sperry's practice included rendering opinions as to the

patentability or the infiingement of patents and preparing certain
legal documents required for patent applications. Federal law granted
the Commissioner of Patents the authority to prescribe regulations
governing the right to practice before the Patent Office, and the
regulations in force at the time of the Sperry case established one
register for lawyers and another for nonlawyers. A predecessor
regulation also stated that the register "shall not be construed as
authorizing persons not members of the bar to practice law." The
Supreme Court accepted that, under Florida law, Mr. Sperry's activities
constituted the practice of law. However, it also held that "the law of
the State ... must yield when incompatible with Federal legislation."
Moreover, it stated that the language in the predecessor regulation was
meant to clarify that no general right to the practice of law was
intended, thereby restricting the practice of law by nonlawyers to
those activities necessary to the preparation and prosecution of patent
applications. The power of Federal agencies to admit nonlawyers to
practice was found to have historical support and the court found this
power "is in no way conditioned on the approval of the state." **Sperry
373 U.S. 379 (1963)**

## 6. Pro Hac Vice

The Defendant Stanley J. Kott is not associated with any Califonia lawfirm

pro hac vice.  Even if he was an attorney at law in some other state, the

state of California established that he could not practice law here for

another party in Birbower:

> The Supreme Court of California found that a New York law firm violated
> unauthorized practice of law statute by practicing law in California
> when it represented a California client in a dispute, making
> preliminary arbitration agreements and negotiating settlement. In
> Birbower, the New York lawyers came to California and did not associate
> with local counsel. The Court also found that physical presence was one
> factor to consider and that lawyer need not set foot in the State to
> run afoul of the rule and that telephone, fax, computer or other modern
> technological means can involve the practice of law.
> **Birbower, Montalbaro, Condon & Frank v. The Superior Court of Santa
> Clara County, 949 P. 2d 1.**

## 7. ULP a Violation of State Law

Stanly J. Kott is neither an attorney at law, nor a member of the California

State Bar and cannot represent this party's interests because it is a

separate corporation.  Defendant Stanly J. Kott's unlicensed practice of law

violates the California Business and Professions Code § 6125:

> "No person shall practice law in California unless the person is an
> active member of the State Bar." (Cal. BPC §6125.)

**8. The Courts Power to Strike**

The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, irrelevant, or scandalous matter.

> "MOTION TO STRIKE. Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."
> **RULE 12(f) FRCP**

**9. Motion to Strike Certain Words Appropriate Remedy**

The words "CF 6290 TJ, a Barge" on page 1 line 15 of defendants verified answer (attached as exhibit 1) by Stanley J. Kott should be stricken with prejudice, because as mentioned above in paragraph 1 and 2, this defendant is not an attorney accepted to the District Court Bar, and cannot answer for party CF 6790 TJ or its present corporate owner. And, this answer is accordingly an insufficient defense for the party CF 6290 TJ, a barge.

**10. Cross-Complaint Vagueness and Uncertainty**

The cross-complaint by Stanly J. Kott against Kenneth Lee Erickson is vague, uncertain and conclusionary.  Cross-Defendant Kenneth Lee Erickson cannot reasonably defend against the pleading, which, among other things, lacks sufficiency as to elements for the cross-defendant to be appraised of a tort.

**11. Cross-Complaint First Cause of Action Incorrect Remedy**

Putting aside the vagueness and uncertainty of the cross-complaint, for the sake of arguendo. The defendant Stanly J. Kott has privy of contract with the corporation, the Hansen Dock and Mooring Service, LLC.  The cross-complaint by Stanly J. Kott improperly seeks to enforce his contract with the corporation, the Hansen Dock and Mooring Service, LLC. as against Kenneth Lee Erickson, who does not have privy of contract with the corporation.

**12. Motion to Strike Appropriate Remedy to Verified Cross-Complaint**

Again, even if Stanley J. Kott was a member of the corporation or acting in partnership with the corporation, he could not represent the corporations interest, let alone file a cross complaint on behalf of the corporation. Stanley J. Kott is not a lawyer accepted to the District Court Bar.

The words, phrases and ideas wherein the defendant Stanley J. Kott moves the court to hear his cross-complaint (attached as exhibit 2) on behalf of the partner corporation cannot be reasonably removed or restricted without making the entire cross-complaint less intelligible then it is. Accordingly, the Cross-Complaint should be stricken.

Alternatively, striking defendant's first and/or second cause of action on the basis of Unlicensed Practice of Law and leaving in place defendant's general allegations in the cross-complaint leaves the plaintiff to defend against a tort without elements.

**13. Redundant, Immaterial, Impertinent, or Scandalous matter**

    **a.** At page six line 4 and 5 of the answer by CF 6290 TJ and Stanley J. Kott these answering defendants say:

> "This is when this situation twisted and "ERICKSON" became a predator and an extortionist and not a victim, as he would like this court to believe."

The above-mentioned words "extortionist" and "predator" are Conclusionary, Redundant, Immaterial, Impertinent, Irrelevant, or Scandalous.

    **b.** At page 6 Line 16 through 19 of the answer by CF 6290 TJ and Stanley J. Kott these answering defendants say:

> "I have been advised that because of the looming danger of "THE BARGE' being seized by "ERICKSON" as a result of this Fraudulent and Malicious Lawsuit. . ."

The above-mentioned words "Fraudulent and Malicious" are Conclusionary, Redundant, Immaterial, Impertinent, Irrelevant, or Scandalous.

**c.** At page 6 Line 29 through 30 of the answer by CF 6290 TJ and Stanley J. Kott these answering defendants say:

> "The rest of the allegations made by "ERICKSON" are totally fabricated, malicious and frivolous."

The above-mentioned words "malicious and frivolous" are Conclusionary, Redundant, Immaterial, Impertinent, Irrelevant, or Scandalous.

**d.** At page 8 Line 4 through 7 of the answer by CF 6290 TJ and Stanley J. Kott these answering defendants say:

> "ERICKSON" and his fraudulent attempts to collect more money that he was never owed, . . ."

The above-mentioned words "fraudulent attempts" are Conclusionary, Redundant, Immaterial, Impertinent, Irrelevant, or Scandalous.

**e.** At page 8 Line 13 through 14 of the answer by CF 6290 TJ and Stanley J. Kott these answering defendants say:

> "The truth is that he owes me money and he has caused me severe harm with this malicious lawsuit."

The above-mentioned words "malicious lawsuit" are Conclusionary, Redundant, Immaterial, Impertinent, Irrelevant, or Scandalous.

**f.** At page 11 Line 23 through 25 of the cross-complaint by CF 6290 TJ and Stanley J. Kott these cross-complaining defendants say:

> "He is not entitled to anything but insists on carrying out this attempted extortion at the expense of the U.S. Government and everyone else he has involved in this "charade."

The above-mentioned words ""this attempted extortion" and "charade" are Conclusionary, Redundant, Immaterial, Impertinent, Irrelevant, or Scandalous.

**g.** At page 11 Line 28 through 32 and continuing on page 12 line 1 to 11 of the cross-complaint by CF 6290 TJ and Stanley J. Kott these cross-complaining defendants say:

> "Public Records show that there have been no less than twenty-two lawsuits filed by "ERICKSON" in San Diego Superior Court over the past 9 years, most of them for personal injury and other unfounded allegations. Several of them are against The City of San Diego and the San Diego Port District and all of the Commissioners on that board. It has cost all of these people and entities tens of thousands of dollars to defend themselves and has cost "ERICXSON" very little as he has acted in PRO PER on all of these cases. I believe that there cannot be any real basis for that many actions to be brought before the courts by anyone. "ERICKSON has told me in the past that he has some training in law and he is using that knowledge to hurt people. "ERICXSON" is practicing "PREDATORY LAW" and he is a "VEXATIOUS LITIGATOR" and he should be reprimanded for placing so many people in such peril and mental anguish. I believe that he is involved in this activity, as "entertainment" and he no regard for the problems he is causing or the expense he is costing everyone he gets angry with."

The above-mentioned words are Conclusionary, Redundant, Immaterial, Impertinent, Irrelevant, or Scandalous.

**h.** t page 12 Line 13 through 15 of the answer by CF 6290 TJ and Stanley J. Kott these answering defendants say:

> "In that space of time, at least four Lawsuits have been filed against "ERICKSON" including one TO PROHIBIT CIVIL HARASSMENT and one criminal case filed against him by the District Attorneys office. That case is now in Appeals."

The above-mentioned words are Conclusionary, Redundant, Immaterial, Impertinent, Irrelevant, or Scandalous.

Respectfully Submitted

Kenneth Lee Erickson          4/30/2008

Erickson v. M/V CF 6290 TJ a barge et. al.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# Exhibit 1

Case No.: CV 07-2266

Exhibit A: Stanley J. Kott's Answer to complaint

-1-

1
2
3
4    [Court name]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA, ADMIRALTY

FILED

06CT25 PM 3:34

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORN.A

BY_____ DEPUTY

5
6    KENNETH LEE ERICKSON,                ) Case No.: 07CV2266 LAB
                                          )
7             Plaintiff,                   ) ANSWER TO COMPLAINT TO THE COURT OF
                                          ) ADMIRALTY FOR
8        vs.:                              )
                                          ) Violation of: Seamans' wage act
9    CF 6290 TJ, Stanley J. Kott an individual )         Longshore and harbor
                                          )              Workers act; wages.
10   And dba Kott Construction, and Does 1 )
                                          ) AND
11   through 10;                           )
                                              CROSS COMPLAINT FOR DAMAGES
12   Defendants and Cross Complainant.

13   _____

14

15       Comes now the defendants, CF 6290 TJ, a barge and STANLEY J. KOTT, who offer the

16   Response to the Complaint to the court of Admiralty for a violation of Seamans' wage

17   Act and harbor workers act for wages and a cross complaint for damages incurred

18   as a result of the filing of this action as follows;

19
20                              General Allegations

21

22   1. The plaintiff, Kenneth Lee Erickson (hereinafter ERICKSON) claims to be permitted

23   by the Port of San Diego to do Underwater Construction and Maintenance when in fact he

24   is not.  Upon investigation it has been verified by Unified Port District of San Diego

25   that the permit that was issued  to ERICKSON expired in April of 2007 and was not

26   renewed.

27       2. The Plaintiff, "ERICKSON" claims among other things that the Defendant "KOTT"

28       is a Canadian Citizen.  "KOTT" is an American Citizen.

29       3. The Plaintiff, "ERICKSON"  claims that the defendant CF 6290 TJ is an ocean

30       going construction barge in navigation owned by the defendant "KOTT".  "THE BARGE"

31       is in fact not owned by the defendant "KOTT" but is owned by Hansen Dock and

32       Mooring Company LLC, involving Steve Hansen and Jim Hansen as shareholders,

                              [Summary of pleading] - 1

1  Hereinafter referred to as "THE PARTNERSHIP". The plaintiff "ERICKSON" claims that
2  "THE BARGE" is ocean going in navigation but this is not true. "THE BARGE" is
3  authorized for inland waterways and harbor use only. It was disabled and incapable
4  of being moved. Some time early in 2007 "ERICKSON"
5  got involved in a three way trade with a mutual friend, Brett Jones. That trade
6  involved him receiving a generator from Brett in exchange for "ERICKSON" to fix the
7  transmission in my barge. He claimed to be knowledgeable at this. What he did was
8  cut two hoses to it and dismantle the pump and he left the pieces of the pump on
9  the floor of "THE BARGE" and walked away leaving the job unfinished. My part of
10  that trade was to remove an engine from Bretts' boat with the crane and transport
11  that engine to shore. Brett and I performed the duties asked of us but "ERICKSON"
12  did not. It was "ERICKSON" himself who left the barge in that state and for him to
13  now claim to have worked on it as a seaman in navigation makes this fraudulent
14  claim that much more of a blatant lie.
15      The only reason "ERICKSON" has claimed that is to allow him to pursue a claim
16  under the ruse of being hired as a Seaman in navigation which would allow him to
17  name "THE BARGE" as a co-defendant and tie the hands of the new owners in order to
18  pressure them into paying him money for a debt that was never owed by the
19  partnership or the defendant "KOTT". The entire First cause of action is based on
20  small snippets of truth mixed with a lot of fabricated information which was
21  created solely by "ERICKSON" for his need to proceed with a claim as a seaman and
22  to allege that he is owed back wages which places the defendant "KOTT" in violation
23  of the LONGSHORE AND HARBOR WORKERS ACT.
24      "ERICKSON" was never "hired" to perform the work he has claimed he did and he
25  was well paid for the small amount of casual help he offered as an incentive for me
26  to enter into a partnership that never did come to fruition. None of what he did
27  had anything to do with the workings of "THE BARGE". As a matter of fact he messed
28  up what little he did do on "THE BARGE" and "ERICKSON" came into this scenario
29  owing me a transmission overhaul.
30  Most of the time he spent at the jobsite was to get an education into the workings
31  of "THE BARGE" in order to be of value to our "Ill Fated Partnership" which
32  will be described later.

[Summary of pleading] - 2

1         That brief education is now being used by "ERICKSON" to sound well

2     versed in the art of jetting pile and setting spuds of which he did neither.

3        An experienced hand at the work he has claimed to have done would find

4  his description of the process humorous and would recognize that there is no way

5  a person who actually did this work would describe it the way he has in this claim.

6       They would also recognize that the time it takes to set a pile varies from as

7  Little as 20 minutes to a maximum of two hours and setting spuds takes as long as

8  It takes for a winch to drop a pipe (spud) into the soil below the barge.. (about

9  Four seconds) .

10

11

12

13                 First Cause of Action

14

15  6  "ERICKSON" alleges that on or about the 18th of June 2007 the defendant "KOTT"

16  told the plaintiff "ERICKSON" that there had been an accident at the Coronado Cays

17  involving "THE BARGE"  and that the Defendant requested that "ERICKSON" dive at the

18  site at 32 Admiralty Cross in Coronado California and assist "THE BARGE" in the

19  removal of the underwater debris, the re-hoisting and re-positioning of two lost

20  pilings which were then placed back on "THE BARGE" and the climbing of the hoist

21  mast and the jib boom to place the main hoisting cable back on the jib pulley.

22  He further alleges that the rate for this work was $250.00 per day and that he

23  accomplished this work in two days.  He also states that the Defendant agreed to

24  pay him $500.00 and that he has repeatedly demanded that the defendant pay him the

25  sum of $500 for the work and labor performed.

26

27             Response to first cause of action

28  There was an incident involving a boat hoist (NOT "THE BARGE") that was carrying

29  two pilings behind 34 Admiralty Cross which occurred on or about the 22nd of May

30  2007. One of the Two pontoons on the boat hoist developed a leak and began to sink.

31  One piling was secured to the main hoist hook prior to the boat hoist sinking. As

32  .air escaped from The damaged pontoon it partially sank and listed to one side.

1  One pile stayed hung on the slings where it should be and I called Brett Jones and

2  Sarah McElroy to come to the Cays from their boat at A8 anchorage and they came

3  over right away.

4  They helped me jet the pile into the appropriate place in the sand.  The plaintiff

5  "ERICKSON" had not been contacted at all and the first pile of the two

6  That he Refers to did not involve him in any way. The second pile was left at the

7  Bottom of the channel in about 8 feet of water and the damaged boat hoist referred

8  to by the Plaintiff was relocated to an area behind 32 Admiralty Cross and left

9  there temporarily. "THE BARGE" is not large and does not have tne capacity to carry

10  one pile let alone two. That is the very reason the Pilings were on a boat hoist in

11  the first place.

12  The pilings "ERICKSON" claims to have placed on "THE BARGE" were never on it.

13  One pile was placed within hours of the incident with no involvement by "ERICKSON"

14  and the other remained in the water until I returned from Camarillo the following

15  week.  During the course of the following week I was pressed for time because my

16  wife and I were moving our household furniture to Upstate New York so I asked Brett

17  and Sarah if they could help me get the last piling set before I left and they

18  agreed to help.

19  Brett suggested that we ask "ERICKSON" if he would assist in getting the second

20  piling hooked up to set it in place because Brett was too busy to get over there

21  right away. I picked up "ERICKSON", drove him downtown to the dive shop to pick up

22  his diving tanks and this took all morning.   Early in the afternoon "ERICKSON" and

23  I hooked the slings on to the second pile, and we attached a balloon to one piece

24  of the sunken boat hoist pontoon. Brett and Sara showed up.  "ERICKSON" stayed to

25  watch the pile be set in place by Brett, Sarah and I.  By that time it was getting

26  late in the day and we all left.  "ERICKSON" was at the job site for no more than

27  four hours but he was not "hired" by me as a diver to perform any work for wages.

28  When he came over to the barge He was attempting to enter a partnership with me

29  and as a potential partner he offered to help. Also keep in mind that he still owed

30  me a transmission overhaul all this time.  While Brett and Sarah were there we

31  noticed that the main winch cable was riding on the hub of the jib pulley and

32  ERICKSON volunteered to place it back on the track of the pulley. I hoisted him up

1    to it in a safety harness with the secondary winch and he slipped the cable back

2    into the groove. This took about 15 minutes. That was the entire scope of work that

3    "ERICKSON" participated in.

4

5        Earlier That year "ERICKSON" and I had discussed a partnership with a man named

6    J.R. in Los Angeles who was to fund a new company to build docks and market them

7    world wide.  "ERICKSON" was interested in gaining a minor share of the new company

8    And this was the reason he loaned me $200.00. It was not $400.00 as he claims and

9    it was  not for "necessaries" as alleged by "ERICKSON" in his general allegations

10   that followed his second and third cause of action.  The loan "ERICKSON" refers to

11   had nothing to do with any work I was involved in.  I required the funds to go to

12   Los Angeles and put the deal together for both of us but it never did happen. J.R.

13   did not come through with his funding and the deal fell apart.  I repaid "ERICKSON"

14   the $200.00 he loaned me and I paid him $400.00 more in cash in TWO SUBSEQUENT

15   MEETINGS when he asked me for more money. "ERICKSON" and I took a trip to Tijuana

16   together at some time later that summer and I paid him some more money at the end

17   of that night.

18   "ERICKSON" called me in October once and told me he needed money to sail to

19   Mexico because the Harbor Police were after him. I had no money at this time and I

20   told him so.  I once again stated to him that I did not owe him any more. I truly

21   believed that he had been more than compensated for the small amount of time he

22   spent with me at "THE BARGE".  I never heard from "ERICKSON" again until he called

23   me in early November 2007 and told me that I owed him $400.00 more and if I did not

24   pay it he was going to sue me. Once again I did not have any money and that I did

25   not owe him any more and I told him so. He mentioned at that time that he was aware

26   that I had "SOLD" the barge to a third party and that I should have enough to pay

27   him more.  At that time I told him that I did not owe him any more and that the

28   Deal I made on the barge turned out to not generate any funds for me because of an

29   arrangement I made with the buyers to take the money owed and to re-invest it in

30   the repairs and refurbishment of the barge.  I did receive a deposit on "The Barge"

31   but that was spent on materials and expenses related to another job I had started

32   in La Playa cove.  It turned out that I was not paid anything for that job either

1  and this too turned out to be a financial disaster. All this time I felt that

2  "ERICKSON" and I were more than "Squared up" and that he was paid too much for the

3  small amount of time he had spent with me and the transmission work still owed.

4       This is when this situation twisted and "ERICKSON" became a predator and an

5  extortionist and not a victim as he would like this court to believe. My partners

6  and I were totally blindsided by the claim "ERICKON" filed for $1,300.00. This

7  figure was totally fabricated by "ERICKSON". There was never any agreement to that

8  as he claims and he was not owed it.

9       I was told by the partners that I would receive no more funding until we

10  determined the final cost of the repair project and because of "ERICKSON" suing me

11  and "THE BARGE" the work on the barge stopped. A major part of that repair work

12  involved replacing the engine and transmission with a rebuilt unit that came as a

13  package deal. The only reason this was necessary is because the transmission never

14  was repaired by "ERICKSON", and it was easier to swap out the entire unit than to

15  replace just the defective transmission.

16  I have been advised that because of The looming danger of "THE BARGE" being

17  seized by "ERICKSON" as a result of this Fraudulent and Malicious Lawsuit,

18  any funds that may have been due me are not going to me, BUT necessary to defend

19  their ownership position in "THE BARGE".

20

21

22

23

24

25

26                           Second cause of Action

27

28

29  The rest of the allegations made by "ERICKSON" are totally fabricated, malicious

30  and frivolous. I never did hire "ERICKSON" to work for me in all that time and his

31  claim that he worked for me from June 22 2007 to June 30 2007 is a total lie. His

32  claim that he worked for me as a seaman on "THE BARGE" while it was in Navigation

1     that was substantial in terms of both its duration and nature" is ludicrous and a

2     lie.  He did not "work" on it and "The Barge" stayed exactly where it was and did

3     not move in all that time.

4          This barge was towed into San Diego harbor by Vessel Assist in July of 2006 to

5     La Playa Cove.  It was then towed by vessel assist to Coronado Cays in November of

6     2006 where it remained until it was towed to Shelter Island in August of 2007. It

7     has been disabled for all that time. For "ERICKSON" to state that he worked as a

8     seaman is an impossibility. The only reason he has claimed this  is to allow him to

9     name "THE BARGE" as a defendant for his own purposes.  At the time "ERICKSON"

10    alleges to have worked for me other things were happening.  I left the damaged boat

11    hoist and "THE BARGE" behind the homes of my clients at 32, 30 and 34 Admiralty

12    Cross while I moved my furniture across the country to Upstate New York.  I was

13    threatened by my Client Kay Catherwood to get back there and remove everything or

14    they would call the coast guard and have it removed at my expense.  I accomplished

15    this upon my return from upstate New York and I moved "the barge" and the remains

16    of the damaged float away from that location to 61 The Point where I repaired a

17    dock for another client at 61 The Point in Coronado Cays.

18         Contrary to his claim "ERICKSON" once again had no participation at this

19    address and did no work on the barge or the job.  He showed up late one afternoon

20    and demanded money from me and I paid him $200.00 which was all I had at that time.

21    He was told at that time he had no more money coming and to stop asking for more.

22    Mark Horner was working with me when this happened and he will give the court a

23    sworn statement verifying this.   The reason "ERICKSON" filed the lawsuit against

24    me and "THE BARGE" is because he is angry that I became involved in a partnership

25    with another group on the barge because he wanted that for himself and it did not

26    happen.  I could no longer afford to take care of the ongoing expenses and the cost

27    of living in California and I had to leave.

28

29         Late in August 2007 I got a phone call from Ojai California from my ex wife

30    who informed me that my 15 year old daughter had been hospitalized and I needed to

31    come back to California right away to pick up my 15 year old daughter from Vista

32

1   Del Mar hospital in Ventura and take her home with me because of a failed Attempted

2   Suicide.

3

4   "ERICKSON" and his fraudulent attempts to collect more money that he was never

5   owed, "THE BARGE" and the project at La Playa cove all became secondary PRIORITIES

6   at this time and I turned my full attention to getting my daughter out of the

7   situation she was in and back to upstate New York.  This is part of the reason I

8   did not get paid on the project in La Playa cove which was finished by another

9   partner and why I did not participate further in the repairs of the barge.

10

11   I do not owe "ERICKSON" any money and the fact that he has named

12   "THE BARGE" and I as defendants has placed my arrangements with the new

13   partners and my personal finances in total Chaos.  The truth is that he

14   owes me money and he has caused me severe harm with this malicious lawsuit.

15

16

17                         Third cause of action

18

19   Because there are no wages due to "ERICKSON" the basis for the third cause of

20   actions seeking penalties for wages unpaid is not a valid claim, and has no merit.

21

22                         Fourth cause of action

23

24   Because there are no wages due to "ERICKSON" the basis for the fourth cause of

25   action seeking "twice the wages owed per day from the alleged time they were due"

26   Is not a valid claim and has no merit.

27

28                         Fifth cause of action

29

30   Plaintiff "ERICKSON" is seeking attorney fees and costs in an action which is not

31   based on reality. It is an action which is being brought before the courts in PRO SE

32   and in FORMA PAUPERIS because he is angry and for no other reason.   It would be

1 | difficult to see where any costs have been incurred on the part of the Plaintiff,

2 | other than his time, which he has chosen to spend in pursuit of money he is not owed

3 | and for no valid  reason other than his desire for revenge for not entering into a

4 | partnership with me and the barge.  He saw an opportunity to extract money from the

5 | partners who did get the barge.

6

7 |                    Sixth cause of action

8

9 |     The Plaintiff is claiming interest and penalties in the amount of $30,600.00 plus

10 | $200 per day in penalties from here to eternity and there is no basis for this claim

11 | because there is no money owed to him.

12

13 |     Wherefore the defendants STANLEY J. KOTT and "THE BARGE" pray that this case be

14 | dismissed and that all claims brought before this court in this action by the

15 | plaintiff KENNETH LEE ERICKSON be set aside as Fraudulent and malicious.

16

17 |                    _Stanley J. Kott_

18 | _SJKott Feb 20/08_ Stanley J. Kott. February 20 2008

19 | I, Stanley J. Kott am the defendant along with "THE BARGE" CF 6290 TJ in the above-

20 | titled action.  I have read my response to the foregoing complaint and know the

21 | contents thereof.  The same is true of my own knowledge, except as to those matters

22 | which are therein alleged on information and belief, and as to those matters, I

23 | believe them to be true.

24

25 | I declare under penalty of perjury under the laws of the State of California that the

26 | forgoing is true and correct.

27

28 | Stanley J. Kott      February 20, 2008

29

30 | _SJKott February 20 2008._

31 | _Stanley J. Kott_

32

Erickson v. M/V CF 6290 TJ a barge et. al.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Exhibit 2**

Case No.: CV 07-2266

Exhibit A: Stanley J. Kott's Cross-Complaint

-1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21                          CROSS COMPLAINT
22
23
24                          General  Allegations
25
26      Because the claim presented by "ERICKSON" named "THE BARGE and Stanley J. Kott as
27   defendants any funds that were due to me by my "PARTNERS" and the process of working
28   on "THE BARGE" by Steve Hansen and Jim Hansen has stopped. If that work cannot proceed
29   "THE BARGE" will be incapable of being used to generate money for the partnership and
30   this will cost the partnership thousands of dollars per day in lost revenues. Ongoing
31   work on the barge ceased in Mid November when the plaintiff "ERICKSON" delivered
32   paperwork to the partners outlining his course of action and naming "THE BARGE" as a

1    defendant in a case where he knew he had no basis for such a claim. This action was

2    totally aimed at extracting monies from the partners and not based on any reality.

3    This is further evidenced by the fact that "ERICKSON" did not serve the defendant

4    "KOTT" with this lawsuit until months later. He only delivered it to the partners

5    where he felt he could have a better opportunity to get money when he was informed by

6    me that I had none and that I did not owe him anything.  "ERICKSON" also owes "KOTT"

7    an overhaul on the transmission on  "THE BARGE" and he has never taken that into

8    consideration in any of the allegations or claims he has put before this court.  It

9    cost the partnership $3,500.00 plus the cost of hardware necessary for the exchange

10   and a month of time to replace the power train in "THE BARGE". The only reason this

11   was necessary is because "ERICKSON" did not repair a transmission he was supposed to

12   repair as his part of an exchange he did not complete.

13       "ERICKSON" received the full benefit of that exchange but he did not fulfill his

14   obligation under that exchange which was to overhaul the transmission in the barge.

15   The total amount of this deficiency has cost the partnership at least $5000.00 in hard

16   costs and a month of labor for Steve Hansen. The amount of this loss is at least

17   $8,000.00

18

19   "ERICKSON" was told that the partners were not going to pay him the $5,000 he said he

20   would settle for so he finally served me in Florida.

21   In a recent call from "ERICKSON" he stated "So they are just going to screw me over"

22   as if he was doing everyone a big favor by offering to settle for $5,000.00 and not in

23   excess of $30,000 he demanded in this law suit.  He is not entitled to anything but

24   insists on carrying out this attempted extortion at the expense of the U.S. Government

25   and everyone else he has involved in this "charade".

26

27

28   Public Records show that there have been no less than twenty two lawsuits filed by

29   "ERICKSON" in San Diego Superior Court over the past 9 years, most of them for

30   personal injury and other unfounded allegations.  Several of them are against

31   The City of San Diego and the San Diego Port District and all of the Commissioners on

32   that board.  It has cost all of these people and entities tens of thousands of dollars

[Summary of pleading] - 11

1    to defend themselves and has cost "ERICKSON" very little as he has acted in PRO PER on

2    all of these cases. I believe that there can not be any real basis for that many

3    actions to be brought before the courts by anyone. "ERICKSON has told me in the past

4    that he has some training in law and he is using that knowledge to hurt people.

5    "ERICKSON" is practicing "PREDATORY LAW" and he is a "VEXATIOUS LITIGATOR" and he

6    should be reprimanded for placing so many people in such peril and mental anguish. I

7    believe that he is involved in this activity as "entertainment" and he no regard for

8    the problems he is causing or the expense he is costing everyone he gets angry with.

9    I also believe that he is using the U.S. District Court to handle this action because

10   he has "Worn out his welcome" at the San Diego Superior Court and he would not be

11   allowed to proceed with the outrageous claims and damages he is seeking in that court.

12

13   In that space of time at least four Lawsuits have been filed against "ERICKSON"

14   including one TO PROHIBIT CIVIL HARASSMENT and one criminal case filed against him by

15   the District Attorneys office.  That case is now in Appeals.  I was told by "ERICKSON"

16   that he was going to place an in the San Diego Newspaper claiming that I cheated him.

17    I am not sure if he has done that or not but he has threatened to do that and it

18   would not surprise me based on his need to be perceived as a "VICTIM".  He has also

19   demanded $5,000 from my partners as a payoff to drop this law suit and he would make

20   it go away. His reasoning is none other than "It will cost you that much to defend

21   yourselves against it and you will lose anyway so you might as well just pay me and

22   make it go away"  There is no way to guarantee that it will go away because the fact

23   is that he is not owed money now and has filed this suit in an attempt to extort funds

24   from me and my partners in "THE BARGE".

25       If this lawsuit is not defended against successfully there is no way of knowing

26   that he will not do the same thing again in a few months.  I have no money and

27   "ERICKSON" knows that and that is the reason he named "THE BARGE" in this lawsuit.  He

28   believed that the partners have money and that is the reason he needed to hold this

29   over their heads.  By just naming Myself as a defendant and not naming "THE BARGE"

30   there would have been no threat to the partners and now they are tormented by this

31   lawsuit and worried they are going to lose the barge and their substantial investment

32   of cash and time to "ERICKSON" when they have had nothing to do with him. What

1  "ERICKSON" does not fully comprehend is that the partners too have limited resources

2  to work with and they are exhausted as well.

3        They have run up a bill with an attorney seeking advice and they have been

4  assured that they indeed could lose the barge if this law suit is not defended

5  successfully by me.  They attempted to file a statement of defense on behalf of "THE

6  BARGE" only to be told by the court that they were not a party to the lawsuit so could

7  not file a defense.   "ERICKSON" is well aware of the predicament he has created for

8  them and he has asked me to demand payment from them several times.

9

10                        First Cause of Action

11        I am in a very bad position financially and cannot afford to hire an attorney to

12  defend myself against this lawsuit. I have moved to Florida because I cannot afford to

13  Live in California any longer. I have been placed in that position because of the

14  demands of "ERICKSON".  I believe it has cost me in excess of $10,000 in monies owed

15  to me by my partners on our purchase agreement.and they have no way of paying those

16  funds to me until the lawsuit filed by "ERICKSON" is dismissed and "The Barge" is

17  finished and put back to work. The total monies due to me by the partners is

18  $10,000.00

19

20                        Second Cause of Action

21  The partners have invested over eighteen thousand dollars in cash and four months of

22  hard work into upgrades on "THE BARGE" and the arrangements with me. "ERICKSON" is

23  aware that the deal I made with them involved me participating in that cost prior to

24  any funds being paid to me and he is also aware that the work has stopped on the barge

25  as a result of his actions which places our whole arrangement and ability to generate

26  an income with "The Barge" in jeopardy. This delay is costing the partnership

27  thousands of dollars per day in lost revenues and this figure will be determined at

28  trial from date the delay was caused by the actions of "ERICKSON". Part of the delay

29  was caused by "ERICKSON" in his failure to overhaul a transmission in the barge. I

30  would estimate that the loss to the partnership and "KOTT" to date would be $42,000 in

31  lost revenues.

32

                        [Summary of pleading] - 13

The partners have been paying slip fees at Driscolls' Landing at $350 per month since August and have rented an office at that location for $2,500 per month since November all for the purposes of using "THE BARGE" as their only source of income. These are ongoing expenses that have been placed in perpetuity by the actions of "ERICKSON". The hard costs for slip fees and office rent from the time ERICKSON delivered the paperwork to the partners and caused the delay of further investment of time and money into the barge are;  $1,400.00 in slip fees and $10,000.00 in office rent. This totals $11,400.00 to date and the final figures will be determined at trial from the date all work on "THE BARGE" stopped.

I also would like to request permission to PROCEED IN FORMA PAUPERIS. I would like to arrange for a hearing in Florida at a U.S. District Court here. "ERICKSON" has asked the U.S. Government to sponsor this attempt at extortion.  I believe that "ERICKSON" is no more needy than myself and I believe there should be some compensation paid by him for the grief and damages he has caused me and my partners.

Wherefore defendants pray judgment against plaintiff as follows:

1. For Compensatory damages in the amount of $10,000.00 for loss of payment to defendant "KOTT" by the partners as a result of this action by "ERICKSON";

2. For Compensatory damages in the amount of $8,000.00 for the loss to "KOTT" and The partnership as a result of the transmission not being overhauled by Erickson in an exchange where he was required to do so but failed to honor his End of the deal.

[Summary of pleading] - 14

3.  For compensatory damages in the amount of $42,000.00 for lost revenues to the
    the partnership and "KOTT" as a result of delays caused by this action by
    "ERICKSON" and his failure to complete the overhaul of the transmission on
    the barge.

4.  For Compensatory damages in the amount of $11,400.00 for extra rent and slip
    Fees paid by the partnership as a result of the delay caused by "ERICKSON";

5.  For reasonable attorneys' fees and for the cost of suit herein incurred;

6.  For interest on an amount determined at trial from date compensation due;

7.  For such other and further relief as the court may deem appropriate.

Stanley J. Kott _____ Feb 20/08        February 20, 2008

_Stanley J. Kott._

I, Stanley J. Kott am the defendant and cross complainant in the above titled action.
I have read the foregoing complaint and know the contents thereof.  The same is true
of my own knowledge, except as to those matters which are therein alleged on
information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

Stanley J. Kott        February 20, 2008

_SJ Kott Feb 20/08_

_Stanley J. Kott_

1

# UNITED STATES DISTRICT COURT

2

## SOUTHERN DISTRICT OF CALIFONIA, ADMIRLTY

3

| | |
|---|---|
| 4   KENNETH LEE ERICKSON | Case No.: 07cv2266-LAB (CAB) |
| 5            Plaintiff, | DECLARATION OF 'SERVICE |
| 6   vs. | PERSON SERVED: Stanley J. Kott, CF 6290 TJ a barge, |
| 7   CF 6290 TJ a barge, Stanley J Kott an individual and dba Kott Construction, 8   and Does 1 through 10; | |
| | DATE SERVED:       May 1, 2008 |
| 9          Defendants. | |

10  I, The undersigned declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; that I served the above named

11  person the following documents

12  **Notice of Motion, Motion, Declaration of Kenneth Lee Erickson, Memorandum of Points and Authorities and Related Exhibits**

13      1. In the following manner:

14      By placing a copy in a separate envelope, with postage fully prepaid, for each address named below; and, depositing each in the U.S. Mails at San

15      Diego, Ca. on 5/1/2008.

16

17  Stanley J. Kott
52 Broadmoor Lane
Rotonda West, Florida

18  33947-1902

19  CF 6290 TJ,  a barge
C/O Roger Haskell ESQ. Attorney
1719 Valkyria Lane

20  El Cajon, Ca
92019-4144

21

22  Executed on 5/1/2008 at San Diego, California
      George Robinson

23  /S/  *George Robinson*

24

25

-1-